**Jack D. CLARK, Plaintiff,**

v.

**The STATE OF ILLINOIS et al., Defendants.**

**No. 75 C 2759.**

United States District Court, N. D. Illinois, E. D.

May 19, 1976.

Edward F. Diedrich, James R. Buck, De Kalb, Ill., for plaintiff.

State of Illinois, William J. Scott by Raymond McKoski, Chicago, Ill., for State of Illinois.

Jack M. Wesoky, Jay S. Judge, James R. Schirott, Park Ridge, Ill., for County, Sheriff, and deputy Sheriffs.

## MEMORANDUM OPINION

WILL, District Judge.

Various defendants have brought motions to dismiss and for summary judgment. This opinion disposes of those motions.

Plaintiff's four-count complaint seeks to recover in each count $25,000 actual damages and $25,000 in punitive damages plus costs. Count I alleges the wilful and malicious arrest and detention of plaintiff without probable cause, Count II the beating by individual defendant officers which caused him to suffer severe injuries, and Count III the malicious prosecution of plaintiff for the offenses of criminal trespass to land, disorderly conduct, and aggravated battery. Jurisdiction is allegedly based on the Fourth and Fourteenth Amendments to the United States Constitution, 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 28 U.S.C. § 1343.

The County of Kendall has moved to dismiss the complaint on the ground that this Court lacks subject matter jurisdiction under 42 U.S.C. § 1983 as well as under the Fourteenth Amendment. It claims that the County is not a person within the meaning of § 1983 and that this Court should not entertain an action for damages against the County under the Fourth or Fourteenth Amendments.

The sheriff, Thomas Usry, and deputy sheriffs, Taylor, Green, Perkins, Alsup, and Goins, have moved for summary judgment on Counts I and III, which relate to false arrest and imprisonment. They claim that plaintiff's conviction of the offense of resisting an officer precludes any action for false arrest. For the following reasons, both motions are denied.

*Motion to Dismiss*

■ Plaintiff alleges that we have jurisdiction over Kendall County under the Fourth and Fourteenth Amendments as well as 42 U.S.C. § 1983. We agree with the County that it is not a "person" within § 1983, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and is not subject to suit under the Fourth Amendment which is limited to action by the Federal Government. We conclude, however, that the County may be sued for money damages for alleged specific violations of the Fourteenth Amendment and this Court has jurisdiction of such a suit.

In opposing the County's motion, plaintiff cites *Williams v. Brown*, 398 F.Supp. 155 (N.D.Ill.1975), in which Judge Marshall held that an action for money damages could be sustained against a municipality for the deprivation of due process rights under the Fourteenth Amendment. In that case, the plaintiff alleged that police officers unlawfully arrested and confined her against her will, depriving her of Fourteenth Amendment rights. She sought damages from the officers as well as from the City of Chicago. The city contended that the doctrine of respondeat superior was not available under the Fourteenth Amendment, and moved to dismiss.

Judge Marshall reasoned that, since an action for declaratory and injunctive relief under § 1331 was clearly available against the city for violation of Fourteenth Amendment rights, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and *Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), the only question before the court was whether the remedy of damages was also available to the plaintiff. He concluded, based on *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Monroe v. Pape, supra*, and *Bivens, supra*, that such a remedy was available and pointed to several cases in which damage actions had been successfully brought by various plaintiffs. In this connection, he noted Justice Harlan's concurring opinion in *Bivens*, which

indicated that a statute which is deemed to provide equitable relief for all areas of subject matter jurisdiction enumerated therein is also sufficient to empower a federal court to grant a traditional remedy at law such as damages.

Pointing to *Monroe v. Pape, supra*, Judge Marshall concluded that damage liability of a municipality for the unconstitutional acts of its employees is particularly appropriate in police misconduct cases and that it would be irrational to immunize municipalities from suit under the Fourteenth Amendment, that portion of the constitution which is designed to limit the abuse of individual rights by state entities.

Defendant County of Kendall argues, citing *Jamison v. McCurrie*, 388 F.Supp. 990 (N.D.Ill.1975), that a monetary remedy should not be afforded under the Fourteenth Amendment unless the acts of a defendant violate some specific mandate of the constitution. In *Jamison*, the plaintiff sought to amend her complaint to add the city as a party to her suit against several police officers for negligently and wrongfully refusing to incarcerate a citizen who randomly shot plaintiff's decedent. Judge McLaren held that the court had jurisdiction under § 1331(a) over the claim against the city where more than $10,000 was in controversy but that under the circumstances it could not create a monetary remedy under the Fourteenth Amendment. He noted that cases creating such a remedy did so in response to more specific mandates of the constitution, such as the prohibition against unreasonable searches and seizures or the prohibition against state-imposed racial discrimination, and that plaintiff's claims against the city for allegedly negligently training and supervising policemen did not touch on "similar concepts central to federal constitutional rights."

In an attempt to apply the reasoning of Judge McLaren to achieve a similar result in the instant case, the County asserts that in all cases relied on by the court in *Williams*, monetary relief was granted to remedy violations of specific constitutional mandates and that in no case has a court extended or created a monetary remedy for violation of a non-specific constitutional mandate such as "due process." The County concludes that, since the "due process" clause is non-specific, amorphous and ever-changing, it is inappropriate to grant monetary relief for the violation thereof unless the due process mandate is spelled out, such as in the taking of land without just compensation.

In the instant case, unlike *Jamison*, more than a mere omission is alleged by plaintiff. The defendants, specifically the sheriff's deputies, are accused of falsely arresting and imprisoning plaintiff, maliciously prosecuting him, and using excessive force against him. These are violations of the "specific" prohibition of the Fourteenth Amendment against the deprivation of liberty without due process of law, and have historically been recognized as such. They are quite as much violations of the due process mandate as is the taking of property by the state without just compensation.

■ Judge McLaren's language in *Jamison* cautioning against the creating of a monetary remedy in cases of due process violations which do not touch on concepts central to federal constitutional rights is inapplicable to allegations such as those now before us. In relative severity, the instant allegations go beyond even those considered by the court in *Williams* and are obviously more specific than the negligent failure to train and supervise the police alleged in *Jamison*.

The County asserts:

"[i]n no case has the Court extended or created a monetary remedy directly under the Constitution in response to a non-specific mandate of the Constitution such as is alleged in the instant case that is, the due process of [sic] clause of the Fourteenth Amendment."

This is both inaccurate and irrelevant. As just pointed out, alleged false arrest and imprisonment, the use of excessive force and malicious prosecution are hardly "non-specific" deprivations of liberty without due process.

In *Skehan v. Board of Trustees*, 501 F.2d 31 (3d Cir. 1974), moreover, the court held that an appropriate remedy for defendant's discharge of plaintiff without procedural due process was back pay, reinstatement being unavailable because of the expiration of plaintiff's contract. It accepted the district court's finding of no violation of the First Amendment relative to the discharge and remanded the case to the district court for a factual determination of whether First Amendment violations may have existed relative to the college's offering plaintiff a terminal contract.[1]

Finally, the Seventh Circuit has held that a body politic may be held liable for damages under 28 U.S.C. § 1331. *Calvin v. Conlisk*, 520 F.2d 1 (7th Cir. 1975); *Hostrop v. Board of Junior College District Number 515*, 523 F.2d 569 (7th Cir. 1975). In *Calvin*, the plaintiffs, alleged victims of repeated instances of excessive unwarranted physical force, unlawful arrests without probable cause, and illegal search and seizure by police officers, sought an injunction against the city and individual defendants, ordering them to take all appropriate steps within their power to prevent police officers from engaging in unconstitutional conduct and to discipline officers who engaged in such misconduct. The court held that, since plaintiffs had not pressed a damage claim against the city, their assertion of jurisdiction under § 1331 was improper unless the injunctive claim put into controversy was found to be an amount greater than $10,000 in value. In *Hostrop*, the court held that plaintiff was entitled to recover damages from the Junior College District for the denial of his due process rights prior to discharge. Jurisdiction over the District was founded upon § 1331(a).

█ It should be noted that, in Illinois at least, the local governmental unit, by virtue of its indemnity obligation, is independently responsible indirectly to compensate in money damages any person suffering a deprivation of constitutional rights by any employee or agent of the governmental unit in the course of his employment. Accordingly, the addition of the County as a defendant is more psychological and cosmetic than substantive in a case, such as this, where the identities of the agents or employees involved are known.

█ In view of the foregoing considerations, we conclude that the Fourteenth Amendment provides monetary relief against a governmental unit for the false arrest, imprisonment, physical abuse, and malicious prosecution of a person by its police officers.

### Vicarious Liability

Defendant argues, citing *Jamison v. McCurrie, supra*, that to create vicarious liability against the County on the instant facts would be unjustified. The County, it urges, can act only through its agents, and if any liability exists, it should be against the individual defendants and not the County. In *Jamison*, Judge McLaren concluded that to create vicarious liability under the constitution given the facts of that case (non-systematic failure to arrest) in the absence of a stated congressional policy would be unjustified. Thus, it was apparently the nature of plaintiff's allegations—the city's failure to require policemen competently to perform their jobs—which led the court not to find vicarious liability.

The quite different facts in *Williams v. Brown, supra*, apparently led Judge Marshall to a different result. In that case, he concluded that in each of the cases relied upon by him, the existence of vicarious liability was assumed, since the actions involved in each of those cases were carried out by employees of the political entity.

---

1. In its reply brief, defendant misinterprets the *Skehan* case in the following manner:

   "There the court found that 'because the requisite jurisdictional mount [sic] of § 1331 is pleaded, the fact that the college is not a "person" in the meaning of 42 U.S.C. § 1983, is not significant.' . . . The plaintiff there alleged violations of his First Amendment rights to his freedom of speech. The *Skehan* case thus provides another example of court created monetary remedy under a specific mandate of the Constitution—the First Amendment guarantee of freedom of speech."

He further recognized that a municipality can carry out its executive activities only through its employees.

■ In our opinion, this analysis presents no additional considerations from those previously discussed. If a county may be sued for money damages under the Fourteenth Amendment for the acts of its agents, as we have found, the doctrine of vicarious liability adds nothing to the analysis. On the other hand, it is clear that under § 1983, *Monroe v. Pape, supra,* and its progeny, the doctrine of vicarious liability is not applicable and a political subdivision may not be sued directly thereunder.

### Motion for Summary Judgment

■ Defendants have moved for summary judgment with respect to Counts I and III of the complaint on the ground that plaintiff is collaterally estopped from maintaining this action, since he was convicted in state court for resisting an officer. They cite *Palma v. Powers,* 295 F.Supp. 924 (N.D. Ill.1969) and *Anderson, et al. v. Village of Arlington Heights,* 73 C 687, unpublished opinion decided June 6, 1975. Plaintiff opposes the motion on the following grounds: 1) Collateral estoppel is applicable only in those cases where a party seeks to relitigate issues which have been adjudicated previously, and the issues raised by Counts I and III of the plaintiff's complaint were not litigated in the plaintiff's conviction for resisting arrest; 2) The case of *Palma v. Powers, supra,* is distinguishable from the instant case.

In *Palma v. Powers, supra,* this Court held that Frank Mamolella, who had filed complaints against police officers for false arrest and malicious prosecution as well as for the unlawful search of his person and premises, was precluded from relitigating the issue of whether there was probable cause for his arrest and prosecution. Those issues were necessarily determined in the criminal proceeding giving rise to his conviction. Memolella was convicted for the criminal offense of gambling, which grew out of the arrest and search in question.

Regarding the applicability of collateral estoppel we said:

"Issue preclusion generally applies only to those matters actually raised and adjudicated in the antecedent suit. The classic statement of this rule is found in *Cromwell v. County of Sac* [footnote omitted] where the Supreme Court of the United States stated:

\* \* \* \* \* \*

" 'In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been litigated and determined. Only upon such matter is the judgment conclusive in another action.' " 94 U.S. 351, 353, 24 L.Ed. 195 (1876)

Pointing to Illinois law, plaintiff contends that the issues of probable cause for his arrest and prosecution on charges of aggravated battery, disorderly conduct, and criminal trespass to land were either not litigated or were resolved in plaintiff's favor, since the charges of disorderly conduct and criminal trespass to land were dismissed prior to any trial and the defendant was found not guilty by a jury on the charge of aggravated battery.

The plaintiff was found guilty only of resisting a police officer. That offense arose under Illinois Revised Statute, chapter 38, section 31–1, which reads:

"A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both."

The Committee Comments—1961 following the statute provide:

"Ill.Rev.Stat.1959, ch. 38, § 499, covered resistance to officers only when executing process. Section 31–1 broadens the offense to include resistance or obstruc-

tion to any authorized act of a peace officer (defined in § 2–13), known to be such. Note that the offense covers only resistance or obstruction to 'authorized' acts of the officer. However, if the act resisted or obstructed is the making of an arrest, a private person is not authorized to resist such arrest with force even though he knows the arrest is unlawful (§ 7–7)."

Finally, chapter 38, section 7–7(a) reads as follows:

"A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful."

The Illinois Supreme Court has held that the making of an unlawful as well as a lawful arrest is an authorized act for purposes of section 31–1. *People v. Locken*, 59 Ill.2d 459, 322 N.E.2d 51 (1974).

Plaintiff's conviction on the charge of resisting a police officer, therefore, necessarily adjudicated only the issue of whether plaintiff had resisted an arrest by a person he knew to be a peace officer. It obviously did not determine that probable cause existed for plaintiff's arrest on the three substantive charges. The dropping of the charges of disorderly conduct and criminal trespass and plaintiff's acquittal on the aggravated battery charge certainly presents the possibility that his initial arrest was without probable cause. Similarly, in view of plaintiff's acquittal, the question of whether his prosecution for that offense was malicious also remains open.

Defendants argue that, since plaintiff was found guilty of resisting an officer, the defendants "obviously" had cause to arrest him. Consequently, they continue, his arrest and imprisonment were not false and his prosecution was not malicious. They urge that, as a general proposition, it is sufficient if a person is properly arrested and convicted on only one of the charges for which he was initially arrested and pros-

ecuted; otherwise, a person arrested on charges of kidnapping and murder and convicted only on the kidnapping charge would have a civil rights action for false arrest and imprisonment and malicious prosecution for the offense of murder. To support the latter proposition defendants again cite *Palma v. Powers, supra,* and *Anderson v. Arlington Heights, supra.* In *Palma,* the state's attorney amended the complaint by reducing the charge against the plaintiff, the defendant in the state criminal action, from a felony to a misdemeanor. This Court still held that the prior criminal conviction barred the civil rights action. In *Anderson,* the plaintiff had been arrested and charged with aggravated battery, resisting a police officer, and obstructing a police officer. Prior to trial the charges of aggravated assault were reduced or dropped to resisting a police officer and obstructing a police officer. Thus, in that case the charges were dropped from a felony to a misdemeanor. Finally, defendants urge that plaintiff's position would require arresting officers and prosecutors to charge persons arrested with one offense, when many had been committed, and subject officers to suit in federal court any time a charge against an accused person was dropped.

Defendants overstate the consequences of a holding that the instant plaintiff states a cause of action under Counts I and III against the individual defendants. A conviction for resisting arrest does not establish that the arrest was lawful. See Ill.Rev. Stat. ch. 38, § 7–7(a) (1962). It is possible, therefore, that defendants had no probable cause to arrest plaintiff for disorderly conduct, criminal trespass to land, or aggravated battery.

If plaintiff had been convicted of any of the substantive charges initially placed against him, *Palma v. Powers, supra,* would be applicable. We agree with defendants that one cannot be falsely arrested even though charged with a number of offenses if found guilty of at least one of them. Here, however, the only charge of which plaintiff was convicted was resisting the

alleged false arrest. That conviction, as already pointed out, relates to none of the substantive charges but simply to the plaintiff's conduct at the time of arrest and does not, in any way, establish that defendants had probable cause for his arrest on any of those charges.

## Conclusion

For the reasons stated, defendant Kendall County's motion to dismiss will be denied as will the various defendants' motions for summary judgment. An appropriate order will enter.